UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-cr-10040-JES |
| ANTONIO D. SEYMON, ) | |
| ) | |
| Defendant(s). ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Antonio D. Seymon's Motions (Docs. 260, 263) to Reduce Sentence Pursuant to 18 U.S.C. § 3582, and the United States' Response (267). For the reasons that follow, the Motions (Docs. 260 and 263) to Reduce Sentence Pursuant to 18 U.S.C. § 3582 are DENIED.

### BACKGROUND

On January 13, 2012, Seymon pled guilty pursuant to a written plea agreement made pursuant to Rule 11(c)(1)(A) for conspiracy to distribute a controlled substance and on April 20, 2012, the Court accepted that plea agreement and sentenced Seymon to 300 months. He is serving his sentence at Forrest City Complex (Low) in Arkansas. In light of the ongoing COVID-19 pandemic, Defendant moves for an order reducing his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), often referred to as the compassionate release statute. The United States moves to dismiss Defendant's motion for failure to exhaust administrative remedies and opposes the request on the merits. Doc. 267.

**COVID-19 Background**

COVID-19 is a new "respiratory disease spreading from person to person." Situation Summary, Ctrs. for Disease Control and Prevention ("CDC"), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html#background (last updated Apr. 19, 2020). The current global pandemic of COVID-19 "poses a serious public health risk." *Id.* "COVID-19 can cause mild to severe illness" with the "most severe illness occur[ing] in adults 65 years and older and people of any age with serious underlying

medical problems." *Id.*

**Defendant's Health**

Defendant presents himself an obese African-American man with high cholesterol, borderline diabetic, and a history of smoking. Defendant is 37 years old.

**COVID-19 in the Bureau of Prisons**

The CDC has recognized that correctional facilities face unique challenges in controlling the spread of COVID-19. Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited Apr. 30, 2020). For instance, because incarcerated "persons live, work, eat, study, and recreate within congregate environments," there is a heightened "potential for COVID-19 to spread once introduced." *Id.* Recognizing this, the Bureau of Prisons ("BOP") has modified operations in all facilities, by, for example, suspending social and legal visits, limiting internal movement of inmates, suspending staff travel, and screening staff and inmates. BOP Implementing Modified Operations, BOP, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Apr. 30, 2020).

Notwithstanding these efforts, inmates and staff at various BOP institutions have tested positive for COVID-19. At Forrest City (Low), Defendant's institution, there are currently 244 inmates who have tested positive for COVID-19 and one (1) staff member[s]. *See* COVID-19 Coronavirus, BOP, https://www.bop.gov/coronavirus/ (last visited May 13, 2020) (scroll down to the COVID-19 Cases section, then click on "Full breakdown and additional details"). The numbers may be greater due to limited testing.

## LEGAL STANDARD

"[A] judgment of conviction that includes . . . a sentence [of imprisonment] constitutes a final judgment" that can be modified in only certain enumerated circumstances. 18 U.S.C. § 3582(b). As relevant here:

> [a] court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment

> . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable if it finds that (i) extraordinary and compelling reasons warrant such a reduction

and that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). "The defendant has the burden to show he is entitled to a sentence reduction." *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *cf. United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

## DISCUSSION

Defendant contends that he should be released pursuant to § 3582(c)(1)(A)(i) because his medical condition makes him uniquely at risk during the COVID-19 pandemic.

**Exhaustion**

Section 3582(c)(1)(A) contains an exhaustion requirement: before a defendant can bring his own motion, he must ask the warden of his facility to bring such a motion. If thirty days pass without a response, he can file a motion in court. *Id.* If, before that time, the BOP declines to bring such a motion, he must fully exhaust all administrative appeals before filing a motion in court himself. *Id.*

Defendant asserts that he requested a sentence modification from the BOP on April 16, 2020, and that, as of filing, he had received no response. Defendant filed his Motion (Doc. 260) on April 23, 2020. After appointment of counsel, the instant Motion (Doc. 263) was filed on May 1, 2020. The United States argues that the compassionate release statute's exhaustion requirement is mandatory and the Court cannot not waive it. Doc. 267, at 14.

Courts around the country are struggling with the issue of whether the exhaustion requirement is waivable. *Compare, e.g.*, *United States v. Perez*, No. 17 Cr. 513-3(AT), 2020 WL 1546422, at *2–3 (S.D.N.Y. Apr. 1, 2020) (finding that exhaustion requirement is waivable), *with, e.g.*, *United States v. Brown*, No. 12-20066-37-KHV, 2020 WL 1935053, at *1–2 (D. Kan. Apr. 22, 2020) (finding that the exhaustion requirement is jurisdictional and not waivable). The Court need not rule on this issue because even if it could waive the exhaustion requirement, it would deny the motion on the merits.

**Merits**

Defendant argues that he has shown that extraordinary and compelling reasons warrant his release because there is a high risk of him being infected with COVID-19 at his facility, where 244 inmates and 1 staff member have tested positive for COVID-19 and he has a serious medical condition. The United States argues that Defendant's condition is not extraordinary and compelling and does not justify release. Doc. 267, at 21.

The compassionate release statute directs the Court to make three considerations: 1) whether extraordinary and compelling reasons warrant a sentence reduction; 2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and 3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Court finds that Defendant has not shown that compelling reasons warrant a sentence reduction in his case (and relatedly, that a reduction would not be consistent with the Sentencing Commission's policy statements) and that the § 3553(a) factors militate against reducing Defendant's sentence.

The Sentencing Guideline's policy statement defines what constitutes extraordinary and compelling reasons that warrant a sentence reduction. *See* U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018).[1] Application notes explain that the medical condition of the defendant (i.e., if he suffers from a terminal illness or a serious physical or medical condition that "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover"), his age (i.e., if he is 65 and declining in health and has served a large portion of his sentence already), or his family circumstance (i.e., if the caregiver for his minor children dies or becomes incapacitated) can constitute extraordinary and compelling reasons warranting release. *Id.* § 1B1.13 cmt. n.1(A)–(C).

---

[1] Previously § 3582(c)(1)(A) allowed only the BOP to bring a motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (effective Nov. 2, 2002 through Dec. 20, 2018). The Sentencing Commission has not updated its policy statement to reflect that a defendant can make his own motion for a sentencing reduction. Some courts have held that this means there is currently no policy statement with which sentencing reductions under § 3582(c)(1)(A) must be consistent. *See, e.g.*, *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020). Here, regardless of whether the policy statement applies, the Court does not believe Defendant has met his burden of showing extraordinary or compelling reasons warrant a sentence reduction.

Seymon points out that CDC and other medical authorities have made clear that COVID-19 is especially dangerous for people with severe chronic medical conditions such as obesity and coronary artery disease and that Seymon suffers from both. Seymon further points to approximately 90% of hospitalized patients who had at least one underlying condition with the most common being obesity, hypertension, chronic lung disease, diabetes mellitus, and cardiovascular disease. More men than women are being hospitalized and the data suggests that black populations might be disproportionately affected by COVID-19. The CDC notes, "Among COVID-19 deaths for which race and ethnicity data were available, identified death rates among Black/African American persons (92.3 deaths per 100,000 population) and Hispanic/Latino persons (74.3) that were substantially higher than that of white (45.2) or Asian (34.5) persons." (Doc. 263, at 16) thereby placing Seymon, as an obese African American man suffering from coronary artery disease at great risk of serious illness or death from COVID-19.

The United States counters that Seymon has not met the "extraordinary and compelling reasons" threshold, that Seymon poses a significant danger to the public and the statutory sentencing factors do not favor release. Doc. 267, at 25.

Courts around the country have granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19. *See, e.g.*, *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (hypertension, prediabetes, prostate issues, bladder issues, and a dental infection); *United States v. Bess*, No. 16-cr-156, 2020 WL 1940809, at *8 (W.D.N.Y. Apr. 22, 2020) (congestive heart failure, coronary artery disease, diabetes, and hypertension); *United States v. Zukerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (diabetes, hypertension, and obesity); *United States v. Williams*, No. 3:04cr95/MCR, 2020 WL 1751545, at *3 (N.D. Fla. Apr. 1, 2020) (coronary disease, peripheral vascular disease, congestive heart failure, end-stage renal disease, hyperlipidemia, and prediabetes); *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *2–3 (E.D. Wash. Mar. 31, 2020) (chronic obstructive pulmonary disease and significant emphysema). Courts have also granted compassionate release where the defendant is immunocompromised. *See, e.g.*, *United States v. Robinson*, No. 18-cr-00597-RS-1, 2020 WL 1982872, at *2 (N.D. Cal. Apr. 27, 2020) (defendant was taking immunosuppressants);

*United States v. Edwards*, No. 6:17-cr-00003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020) (defendant was immunocompromised due to brain cancer, chemotherapy, and steroid prescription); *United States v. Campagna*, No. 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020) (defendant suffered "from a compromised immune system with very low white blood cell counts" (quotation marks omitted)).

      The Court does not seek to minimize the risks that COVID-19 poses to inmates in the BOP, particularly in institutions which already have high numbers of confirmed cases.  But the mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release.

      Nor does the Court seek to minimize Seymon's medical condition. However, the Court does not believe that Defendant has met his burden to establish that extraordinary and compelling reasons justify his release from prison.  With the possible exception of diabetes, he has not shown that his medical condition is an underlying health condition that puts him at risk for a severe case of COVID-19. In this case, Defendant offers that he is an obese African-American with high cholesterol, is borderline diabetic and has a history of smoking. BOP records reflect that the BOP has provided requested medical attention to Defendant.

      Moreover, release would not be consistent with the § 3553(a) factors. These factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," *id.* § 3553(a)(2)(A); and "the need for the sentence imposed to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B). As the Court found at Defendant's sentencing, Seymon was accountable for the distribution of 28 grams of powder cocaine, 2 kilograms of crack cocaine and 1,012 kilograms of marijuana. He received a four-level adjustment for his role in the offense, that as a collector of drug debts on behalf of Eric Cheek in a conspiracy that involved several other participants. BOP records indicate numerous violations and on October 22, 2018, an Information was filed in the Eastern District of Arkansas charging Seymon with possessing a prohibited object in prison, that being a phone. He pleaded guilty and received four months' imprisonment consecutive to this case. See 4:18 CR 00583 (E.D. Ark. 2018).  At this point, Seymon has served a little over nine years of his 25-year sentence. The Court finds that granting a sentence reduction to Seymon would be inconsistent with the § 3553(a) factors because a

reduction would diminish the seriousness of Defendant's offense conduct and his conduct while incarcerated shows Seymon remains undeterred from committing new offenses. The Court therefore denies Defendant's request for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).

## CONCLUSION

For the reasons set forth above, Defendant's Motions (Docs. 260, and 263) to Reduce Sentence Pursuant to 18 U.S.C. § 3582 are DENIED.

Signed on this 13th day of May, 2020.

s/ James E. Shadid
James E. Shadid
United States District Judge
